**Wesley M. WOODWARD, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0107–CR–319.

Court of Appeals of Indiana.

June 27, 2002.

J.J. Paul, III, Indianapolis, Indiana, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Christopher C.T. Stephen, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge.

Wesley Woodward appeals from conviction of resisting law enforcement as a Class A misdemeanor, following a bench trial. We affirm.

### Issues

Woodward raises two issues for our review which we restate as follows:

1. Whether the trial court properly tried Woodward without a jury; and

2. Whether the evidence is sufficient to support his conviction.

### Facts and Procedural History

The facts most favorable to the judgment reveal that at approximately 11 o'clock on the night of April 6, 2000, Officer Woody Burton of the Marion County Sheriff's Department was returning home at the end of his shift. He was traveling south on I–65 in his marked car when a car behind him flashed his bright lights on and off four to six times. That car was later determined to be driven by Woodward. As Officer Burton exited onto Southport Road, Woodward also exited. The off-ramp has four lanes: two for right turns and two for left turns. Officer Burton was in the left-most left turn lane, and slowed on the off-ramp to check on Woodward's vehicle. Woodward passed Officer Burton in the right-most left turn lane. Officer Burton testified that when they approached the end of the off-ramp, the light to turn onto Southport Road was green. Woodward stopped at the green light, and then, after the light had turned red, proceeded to turn left onto Southport Road. At that point, Officer Burton activated his emergency lights and siren and also proceeded onto Southport Road. Woodward continued eastbound on Southport Road at approximately forty-five miles per hour for approximately a mile without stopping, slowing, or otherwise acknowledging Burton. Officer Burton radioed for backup while he followed Woodward, calling in a driver refusing to stop. Woodward finally turned into an apartment complex and parked his vehicle in a parking space. Officer Burton exited his vehicle with his gun drawn and ordered Woodward to exit his vehicle, which he did. Woodward indicated that he had been looking for a well-lit area in which to stop. When backup officers arrived, Woodward was taken into custody for resisting law enforcement.

Woodward was charged with resisting law enforcement as a Class D felony. The case was originally docketed in Marion Superior Court room 5. Woodward filed a waiver of jury trial on September 5, 2000. The court set a bench trial for November 17, 2000. On November 16, 2000, the State filed an agreed motion for continuance of the bench trial and also filed a motion to transfer to a new court. The case was transferred to Marion Superior Court room 99. A pre-trial conference was held in room 99 on November 30, 2000, at which time the court set this case for jury trial on March 28, 2001. At a pre-trial conference on January 18, 2001, the court confirmed the jury trial setting for March 28, 2001. On March 22, 2001, the State requested a continuance of the March 28 jury trial. The jury trial was reset for June 27, 2001. On June 25, 2001, the parties were in court for a ruling on Woodward's motion for discharge. The motion was denied, and the court vacated the jury trial set for June 27 and reset the case for bench trial on that date. Woodward was tried to the court on June 27, 2001, and found guilty of resisting law enforcement as a Class A misdemeanor. He now appeals.

## Discussion and Decision

### I. Bench Trial v. Jury Trial

Woodward first contends that the trial court erred in vacating the June 27 jury trial and resetting the case for a bench trial without his and the State's agreement. Indiana Code section 35–37–1–2 states that "[t]he defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court. All other trials must be by jury." Woodward contends that this section together with a case construing an earlier, but identical, code section, dictate that the State, the defendant, and the trial court all must agree to the waiver of a jury trial and that

a prior waiver is vitiated if the case is subject to a change of venue. *See Schmidt v. State*, 156 Ind.App. 1, 2–3, 294 N.E.2d 638, 638–39 (1973) (construing Ind.Code § 35–1–34–1). In *Schmidt*, the defendant was charged in Marion County Criminal Court with theft by deception. The defendant and the State waived trial by jury and the trial court accepted the waiver. The case was thereafter transferred to Hancock County and set for trial by jury. The defendant objected on the basis of the prior waiver, but the court overruled his objection and submitted the case to a jury. On appeal, the defendant alleged that the trial by jury was prejudicial to him. We held that the change of venue to another court vitiated the prior waiver and that as a defendant has a right to a trial by jury but no corresponding right to a trial by the court, there was no error in the use of a jury. *Id.*

■ However, as the State points out, *Schmidt* involved a change of venue from one county to another. In this case, Woodward's case was transferred from one Marion County court to another Marion County court. Our supreme court has stated that a transfer from one court to another in the same county is neither a change of venue nor a change of judge. *Beason v. State*, 690 N.E.2d 277, 280 (Ind. 1998). *See also Lock v. State*, 273 Ind. 315, 403 N.E.2d 1360 (1980). In *Beason*, the defendant was originally charged with murder in LaPorte Superior Court Number 1. The State subsequently sought transfer to LaPorte Circuit Court pursuant to Indiana Code section 33–5–31.1–9, which provides in part that "[t]he judge of any of the [LaPorte] courts may, with consent of the judge of the circuit or another superior court, transfer any action or proceeding from the court to the circuit court or to another superior court." The defendant objected because the State did

not comply with Indiana Criminal Rule 12 governing a change of judge in a criminal case. Our supreme court held that "the transfer here initiated under Ind.Code § 33–5–31.1–9 was neither a change of judge nor a change of venue, and is not subject to Crim.R. 12." 690 N.E.2d at 280. A similar result was reached in *Lock* on the defendant's challenge to the transfer of his case from Marshall Circuit Court to Marshall Superior Court pursuant to Indiana Code section 33–5–35.5–16, which provides that "[t]he judge of the [Marshall] circuit court may, with the consent of either of the superior courts, transfer any action, cause, or proceeding filed and docketed in the circuit court to that superior court ... to be redocketed and disposed of as if originally filed with the superior court." *Lock*, 403 N.E.2d at 1364.

The record before us does not disclose the reason or authority for the State's request to transfer the case from one room of the criminal division to another. However, the Marion Superior Court Criminal Division Rules provides for such transfers: "The judge of each room of the criminal division, by appropriate order entered of record may transfer and re-assign to any other room of the criminal division any cause pending in that room subject to acceptance by the receiving court." Marion Superior Court Crim. Div. Rule 1. Because the transfer of a case from circuit court to superior court or vice versa is not considered a "change of venue," we likewise cannot say that the transfer of a case between two rooms of the criminal division of the same court is a "change of venue" sufficient to vitiate an earlier waiver of jury trial. We acknowledge that in general, the identity of the judge who will be hearing the case in the absence of a jury is a motivating factor in deciding whether or not to waive a jury. We also acknowledge that in this particular case, the transferee court originally set the case for jury trial

and did not correct that error until two days before trial. However, under these circumstances, we are unable to say that the trial court abused its discretion in relying on Woodward's earlier, valid waiver of a jury trial and trying the case to the bench.

## II. Sufficiency of the Evidence

Woodward also contends that the evidence was insufficient to support his conviction of resisting law enforcement.

### A. Standard of Review

■ Our standard of review for sufficiency claims is well settled: we will not reweigh the evidence or assess the credibility of witnesses. *Bailey v. State*, 764 N.E.2d 728, 730 (Ind.Ct.App.2002), *trans. denied.* Rather, we look to the evidence and reasonable inferences drawn therefrom that support the conviction and will affirm the conviction if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *See id.*

### B. Evidence of Intent

Woodward was charged with resisting law enforcement. The crime is defined as follows: "A person who knowingly or intentionally ... flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop; commits resisting law enforcement...." Ind.Code § 35–44–3–3(a)(3). The crime was charged as a Class D felony because a vehicle was used to commit the offense. Ind.Code § 35–44–3–3(b)(1)(A). Woodward contends that there was no evidence that he intended to avoid or escape Officer Burton.

■ Woodward asks that we graft onto the statute the requirement that the flight be more than merely failing to stop.

Moreover, he asks that we graft onto the elevating factor of use of a vehicle the requirement that the use of the vehicle created some degree of danger. We acknowledge that the other sections of the resisting law enforcement statute require evidence of force and are elevated to a felony only if the use of a vehicle creates a substantial risk of bodily injury to another person.[1] However, the specific section of the statute under which Woodward was charged contains no such qualifiers. The elements of the crime as charged against Woodward are that he: 1) knowingly or intentionally; 2) fled from Officer Burton after Officer Burton identified himself and ordered him to stop; and 3) used a vehicle in fleeing. Each of those elements was proven.

Woodward testified that he became aware of the lights and sirens as he crossed the Southport Road bridge over I–65. He did not pull over because he was "trying to rationalize why I would be pulled over ..." and wanted a clear, well-lighted place to stop where there would be someone who knew him. Tr. at 38. Officer Burton testified that between the time he activated his lights and the time Woodward finally came to a stop in his apartment complex, they passed two gas stations, a Meijer store, and a McDonalds. When Woodward parked and got out of his car, he shouted profanities at Officer Burton. In *Wellman v. State,* 703 N.E.2d 1061, 1063 (Ind.Ct.App.1998), this court concluded that " 'flight' in this context should be understood to mean a knowing attempt to escape law enforcement when the defendant is aware that a law enforcement officer has ordered him to stop or remain in place once there." Although Woodward eventually stopped his car and complied with Officer Burton's orders, the testimony is clear that he was aware of Officer Burton's presence and that Officer Burton wanted him to pull his vehicle over to the side of the road, yet he failed to do so except on his own terms. In this particular instance, Woodward lived only approximately a mile from the place where

---

**1.** The resisting statute, in its entirety, reads as follows:

(a) A person who knowingly or intentionally:

(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;

(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or

(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;

commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).

(b) The offense under subsection (a) is a:

(1) Class D felony if:

(A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense; or

(B) while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person;

(2) Class C felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes serious bodily injury to another person; and

(3) Class B felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes the death of another person.

(c) For purposes of this section, a law enforcement officer includes an alcoholic beverage enforcement officer and a conservation officer of the department of natural resources.

Ind.Code § 35–44–3–3.

Officer Burton attempted to instigate a stop, and he did not speed or disobey any further traffic laws following his illegal turn onto Southport Road as he drove to the location at which he wished to stop. Nonetheless, we cannot say that a person who has admitted to knowing that a police officer wishes to effectuate a traffic stop can, without adequate justification, choose the location of the stop. As Woodward urges us to "be cognizant that there are police/citizen encounters in which citizens may not be comfortable … stopping where an officer selected," Brief of Appellant at 9, we must also be cognizant of the dangers that could await a police officer stopping where the citizen selects. The evidence is sufficient to show that Woodward knowingly or intentionally fled from Officer Burton using a vehicle. His conviction is affirmed.

### Conclusion

Woodward's earlier waiver of trial by jury was effective upon transfer from one room of the Marion Superior Court criminal division to another, and the court did not err by trying him to the court. The evidence was sufficient to support his conviction of resisting law enforcement.

Affirmed.

BAILEY and NAJAM, JJ., concur.