Justice Kennedy
delivered the opinion of the Court.
It is a federal crime for a convicted felon to be in unlawful possession of a firearm. 18 U. S. C. § 922(g)(1). The ordinary maximum sentence for that crime is 10 years of imprisonment. § 924(a)(2). If, however, when the unlawful possession occurred, the felon had three previous convictions for a violent felony or serious drug offense, the punishment is increased to a minimum term of 15 years. § 924(e). The *4 instant case is another in a series in which the Court is called upon to interpret § 924(e) to determine if a particular previous conviction was for a “violent felony/’ as that term is used in the punishment enhancement statute. See James v. United States, 550 U. S. 192 (2007); Begay v. United States, 553 U. S. 137 (2008); Chambers v. United States, 555 U. S. 122 (2009).
In this case the previous conviction in question is under an Indiana statute that makes it a criminal offense whenever the driver of a vehicle knowingly or intentionally “flees from a law enforcement officer.” Ind. Code §35-44-3-3 (2004). The relevant text of the statute is set out in the discussion below. For the reasons explained, the vehicle flight that the statute proscribes is a violent felony as the federal statute uses that term.
I
Petitioner Marcus Sykes pleaded guilty to being a felon in possession of a firearm, 18 U. S. C. § 922(g)(1), in connection with an attempted robbery of two people at gunpoint. Sykes had previous convictions for at least three felonies. On two separate occasions Sykes used a firearm to commit robbery, in one case to rob a man of his $200 wristwatch and in another to rob a woman of her purse.
His third prior felony is the one of concern here. Sykes was convicted for vehicle flight, in violation of Indiana’s “resisting law enforcement” law. Ind. Code §35-44-3-3. That law provides:
“(a) A person who knowingly or intentionally:
“(1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of his duties as an officer;
“(2) forcibly resists, obstructs, or interferes with the authorized service or execution of a civil or criminal process or order of a court; or
*5 “(3) flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop;
“commits resisting law enforcement, a Class A misdemeanor, except as provided in subsection (b).
“(b) The offense under subsection (a) is a:
“(1) Class D felony if:
“(A) the offense is described in subsection (a)(3) and the person uses a vehicle to commit the offense; or
“(B) while committing any offense described in subsection (a), the person draws or uses a deadly weapon, inflicts bodily injury on another person, or operates a vehicle in a manner that creates a substantial risk of bodily injury to another person;
“(2) Class C felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes serious bodily injury to another person; and
“(3) Class B felony if, while committing any offense described in subsection (a), the person operates a vehicle in a manner that causes the death of another person.”
Here, as will be further explained, Sykes used a vehicle to flee after an officer ordered him to stop, which was, as the statute provides, a class D felony. The Court of Appeals of Indiana has interpreted the crime of vehicle flight to require “a knowing attempt to escape law enforcement.” Woodward v. State, 770 N. E. 2d 897, 901 (2002) (internal quotation marks omitted). Woodward involved a driver who repeatedly flashed his bright lights and failed to obey traffic signals. Id., at 898. When an officer activated his emergency equipment, the defendant became “aware... that [the officer] wanted him to pull his vehicle over,” but instead drove for a mile without “stopping, slowing, or otherwise acknowledging” the officer because, he later testified, he “was ‘trying to rationalize why [he] would be pulled over.’ ” Id., at 898,901. *6 Though the defendant later claimed that he was also seeking a “well-lighted place to stop where there would be someone who knew him,” id., at 901, his actions suggested otherwise. He passed two gas stations, a food outlet store, and a McDonald’s before pulling over. When he got out of the ear, he began to shout profanities at the pursuing officer. Ibid. By that time, the officer had called for backup and exited his own vehicle with his gun drawn. Id., at 898. In answering the defendant’s challenge to the sufficiency of the above evidence, the Indiana court held that because he knew that a police officer sought to stop him, the defendant could not “choose the location of the stop” and insist on completing the stop “on his own terms,” as he had done, “without adequate justification,” which he lacked. Id., at 901-902.
In the instant case a report prepared for Sykes’ federal sentencing describes the details of the Indiana crime. After observing Sykes driving without using needed headlights, police activated their emergency equipment for a traffic stop. Sykes did not stop. A chase ensued. Sykes wove through traffic, drove on the wrong side of the road and through yards containing bystanders, passed through a fence, and struck the rear of a house. Then he fled on foot. He was found only with the aid of a police dog.
The District Court decided that his three prior convictions, including the one for violating the prohibition on vehicle flight in subsection (b)(1)(A) of the Indiana statute just discussed, were violent felonies for purposes of § 924(e) and sentenced Sykes to 188 months of imprisonment. On appeal Sykes conceded that his two prior robbery convictions were violent felonies. He did not dispute that his vehicle flight offense was a felony, but he did argue that it was not violent. The Court of Appeals for the Seventh Circuit affirmed. 598 F. 3d 334 (2010). The court’s opinion was consistent with the rulings of the Courts of Appeals in the First, Fifth, Sixth, and Tenth Circuits. Powell v. United States, 430 F. 3d 490 (CA1 2005) (per curiam); United States v. Harri *7 mon, 568 F. 3d 531, 534-537 (CA5 2009); United States v. LaCasse, 567 F. 3d 763, 765-767 (CA6 2009); United States v. McConnell, 605 F. 3d 822, 827-830 (CA10 2010) (finding the flight to be a “crime of violence” under the “nearly identical” § 4B1.2(a)(2) of the United States Sentencing Guidelines). It was in conflict with a ruling by the Court of Appeals for the Eleventh Circuit in United States v. Harrison, 558 F. 3d 1280, 1291-1296 (2009), and at least in tension, if not in conflict, with the reasoning of the Court of Appeals for the Eighth Circuit in United States v. Tyler, 580 F. 3d 722, 724-726 (2009), and for the Ninth Circuit in United States v. Kelly, 422 F. 3d 889, 892-897 (2005), United States v. Jennings, 515 F. 3d 980, 992-993 (2008), and United States v. Peterson, No. 07-30465, 2009 WL 3437834, *1 (Oct. 27, 2009). The writ of certiorari, 561 U. S. 1058 (2010), allows this Court to address the conflict.
II
In determining whether an offense is a violent felony, this Court has explained,
“we employ the categorical approach .... Under this approach, we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction. That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender.” James, 550 U. S., at 202 (internal quotation marks and citations omitted); see also Taylor v. United States, 495 U. S. 575, 599-602 (1990).
So while there may be little doubt that the circumstances of the flight in Sykes’ own case were violent, the question is whether §35-44-3-3 of the Indiana Code, as a categorical matter, is a violent felony.
*8 Under 18 U. S. C. § 924(e)(2)(B), an offense is deemed a violent felony if it is a crime punishable by more than one year of imprisonment that
“(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
“(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.”
Resisting law enforcement through felonious vehicle flight does not meet the requirements of clause (i), and it is not among the specific offenses named in clause (ii). Thus, it is violent under this statutory scheme only if it fits within the so-called residual provision of clause (ii). To be a violent crime, it must be an offense that “otherwise involves conduct that presents a serious potential risk of physical injury to another.”
The question, then, is whether Indiana’s prohibition on flight from an officer by driving a vehicle — the violation of Indiana law for which Sykes sustained his earlier conviction — falls within the residual clause because, as a categorical matter, it presents a serious potential risk of physical injury to another. The offenses enumerated in § 924(e)(2)(B)(ii) — burglary, extortion, arson, and crimes involving the use of explosives — provide guidance in making this determination. For instance, a crime involves the requisite risk when “the risk posed by [the crime in question] is comparable to that posed by its closest analog among the enumerated offenses.” James, 550 U. S., at 203 (explaining that attempted burglary poses risks akin to that of completed burglary).
When a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense. *9 Even if the criminal attempting to elude capture drives without going at foil speed or going the wrong way, he creates the possibility that police will, in a legitimate and lawful manner, exceed or almost match his speed or use force to bring- him within their custody, A perpetrator’s indifference to these collateral consequences has violent — even lethal-potential for others. A criminal who takes flight and creates a risk of this dimension takes action similar in degree of danger to that involved in arson, which also entails intentional release of a destructive force dangerous to others. This similarity is a beginning point in establishing that vehicle flight presents a serious potential risk of physical injury to another.
Another consideration is a. comparison to the crime of burglary. Burglary is dangerous because it can end in confrontation leading to violence. Id., at 200. The same is true of vehicle flight, but to an even greater degree. The attempt Lo elude capture is a direct challenge to an officer’s authority. It is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase. The felon’s conduct gives the officer reason to believe that the defendant has something more serious than a traffic violation to hide. In Sykes’ case, officers pursued a man with two prior violent felony convictions and marijuana in his possession. In other cases officers may discover more about the violent potential of the fleeing suspect by running a check on the license plate or by recognizing the fugitive as a convicted felon. See, e. g., Arizona v. Gant, 556 U. S. 332, 336 (2009).
Because an accepted way to restrain a driver who poses dangers to others is through seizure, officers pursuing fleeing drivers may deem themselves dutybound to escalate their response to ensure the felon is apprehended. Scott v. Harris, 550 U. S. 372, 385 (2007), rejected the possibility that police could eliminate the danger from a vehicle flight by giving up the chase because the perpetrator “might have been just as likely to respond by continuing to drive reck *10 lessly as by slowing down and wiping his brow.” And once the pursued vehicle is stopped, it is sometimes necessary for officers to approach with guns drawn to effect arrest. Confrontation with police is the expected result of vehicle flight. It places property and persons at serious risk of injury.
Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.
Unlike burglaries, vehicle flights from an officer by definitional necessity occur when police are present, are flights in defiance of their instructions, and are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another. See post, at 19-21 (Thomas, J., concurring in judgment); see also post, at 21-22 (listing Indiana cases addressing ordinary intentional vehicle flight and noting the high-risk conduct that those convictions involved).
Although statistics are not dispositive, here they confirm the commonsense conclusion that Indiana’s vehicular flight crime is a violent felony. See Chambers, 555 U. S., at 129 (explaining that statistical evidence sometimes “helps provide a conclusive . . . answer” concerning the risks that crimes present). As Justice Thomas explains, chase-related crashes kill more than 100 nonsuspeets every year. See post, at 19. Injury rates are much higher. Studies show that between 18% and 41% of chases involve crashes, which always carry a risk of injury, and that between 4% and 17% of all chases end in injury. See post, at 20.
*11 A 2008 International Association of Chiefs of Police (IACP) study examined 7,737 police pursuits reported by 56 agencies in 30 States during 2001-2007. C. Lum & G. Fachner, Police Pursuits in an Age of Innovation and Reform 54. Those pursuits, the study found, resulted in 313 injuries to police and bystanders, a rate of slightly over 4 injuries to these nonsuspects per 100 pursuits. Id., at 57. Given that police may be least likely to pursue suspects where the dangers to bystanders are greatest — i. e., when flights occur at extraordinarily high speeds — it is possible that risks associated with vehicle flight are even higher.
Those risks may outstrip the dangers of at least two offenses enumerated in 18 U. S. C. § 924(e)(2)(B)(ii). According to a study by the Department of Justice, approximately 3.7 million burglaries occurred on average each year in the United States between 2003 and 2007. Bureau of Justice Statistics, S. Catalano, Victimization During Household Burglary 1 (Sept. 2010). Those burglaries resulted in an annual average of approximately 118,000 injuries, or 3.2 injuries for every 100 burglaries. Id., at 9-10. That risk level is 20% lower than that which the IACP found for vehicle pursuits.
The U. S. Fire Administration (USFA) maintains the world’s largest databank on fires. It secures participation from over one-third of U. S. fire departments. It reports an estimated 38,400 arsons in 2008. Those fires resulted in an estimated 1,255 injuries, or 3.3 injuries per 100 arsons. USFA, Methodology Used in the Development of the Topical Fire Research Series, http://www.usfa.dhs.gov/downloads/ pdf/tfrs/methodology.pdf (all Internet materials as visited June 3, 2011, and available in Clerk of Court’s case file); USFA, Nonresidential Building Intentional Fire Trends (Dec. 2010), http://www.usfa.dhs.gov/downloads/pdf/statistics/ nonres_bldg_intentional_fire_trends.pdf; USFA, Residential Building Causes, http://www.usfa.dhs.gov/downloads/xls/ estimates/res_bldg_fire„cause.xlsx; USFA, Residential and *12 Nonresidential Fire Estimate Summaries, 2003-2008, http:// www.usfa.dhs.gov/ statistics / estimates / index.shtm. That risk level is about 20% lower than that reported by the IACP for vehicle flight.
Ill
Sykes argues that, regardless of risk level, typical vehicle flights do not involve the kinds of dangers that the Armed Career Criminal Act’s (ACCA) residual clause demands. In his view this Court’s decisions in Begay and Chambers require ACCA predicates to be purposeful, violent, and aggressive in ways that vehicle flight is not. Sykes, in taking this position, overreads the opinions of this Court.
ACCA limits the residual clause to crimes “typically committed by those whom one normally labels ‘armed career criminals,”’ that is, crimes that “show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.” Begay, 553 U. S., at 146. In general, levels of risk divide crimes that qualify from those that do not. See, e. g., James, 550 U. S. 192 (finding attempted burglary risky enough to qualify). Chambers is no exception. 555 U. S., at 128-129 (explaining that failure to report does not qualify because the typical offender is not “significantly more likely than others to attack, or physically to resist, an apprehender”).
The sole decision of this Court concerning the reach of ACCA’s residual clause in which risk was not the dispositive factor is Begay, which held that driving under the influence (DUI) is not an ACCA predicate. There, the Court stated that DUI is not purposeful, violent, and aggressive. 553 U. S., at 145-148. But the Court also gave a more specific reason for its holding. “[T]he conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate,” id., at 145 (analogizing DUI to strict-liability, negligence, and recklessness crimes). By contrast, the Indiana statute at issue here has a stringent mens rea requirement. Violators must act “knowingly or *13 intentionally.” Ind. Code § 35-44-3-3(a); see Woodward, 770 N. E. 2d, at 901 (construing the statute to require “a knowing attempt to escape law enforcement” (internal quotation marks omitted)).
The phrase “purposeful, violent, and aggressive” has no precise textual link to the residual clause, which requires that an ACCA predicate “otherwise involv[e] conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). The Begay phrase is an addition to the statutory text. In many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk, for crimes that fall within the former formulation and those that present serious potential risks of physical injury to others tend to be one and the same. As between the two inquiries, risk levels provide a categorical and manageable standard that suffices to resolve the case before us.
Begay involved a crime akin to strict-liability, negligence, and recklessness crimes; and the purposeful, violent, and aggressive formulation was used in that case to explain the result. The felony at issue here is not a strict-liability, negligence, or recklessness crime and because it is, for the reasons stated and as a categorical matter, similar in risk to the listed crimes, it is a crime that “otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii).
<!
Sykes finds it significant that his flight conviction was not under the Indiana provision that criminalizes flight in which the offender “operates a vehicle in a manner that creates a substantial risk of bodily injury to another person.” Ind. Code § 35 — 44—3—3(b)(1)(B). In structuring its laws in this way, Sykes contends, Indiana confirmed that it did not intend subsection (b)(l)(A)’s general prohibition on vehicle flight to encompass the particular class of vehicle flights that subsection (b)(1)(B) reaches.
*14 Sykes’ argument is unconvincing. Indiana treats violations of subsections (b)(1)(A) and (b)(1)(B) as crimes of the same magnitude. They are both class D felonies, and both carry terms of between six months and three years, Ind. Code §35-50-2-7(a). The distinction between the provisions is their relationship to subsection (a), which prohibits, among other acts, much conduct in which a person “(1) forcibly resists, obstructs, or interferes with a law enforcement officer . . .; (2) forcibly resists, obstructs, or interferes with the authorized service or execution of . . . process . . . ; or (3) flees from a law enforcement officer.” § 35-44-3-3(a). Subsection (b)(1)(A) only involves the conduct barred by subsection (a)(3) — flight—which, it states, is a felony whenever committed with a vehicle. Under subsection (b)(1)(B), by contrast, any of the offenses in subsection (a) is a felony if the offender commits it while using a vehicle to create a substantial risk of bodily injury to another. Taken together, the statutory incentives always favor prosecuting vehicle flights under subsection (b)(1)(A) rather than subsection (b)(1)(B). They reflect a judgment that some offenses in subsection (a) can be committed without a vehicle or without creating substantial risks. They reflect the further judgment that this is not so for vehicle flights.
Serious and substantial risks are an inherent part of vehicle flight. Under subsection (b)(1)(A), they need not be proved separately to secure a conviction equal in magnitude to those available for other forms of resisting, law enforcement with a vehicle that involve similar risks.
In other words, the “similarity in punishment for these related, overlapping offenses suggests that [subsection (b)(1)(A)] is the rough equivalent of one type of [subsection (b)(1)(B)] violation.” Post, at 25 (Thomas, J., concurring in judgment); see also ibid., n. 2. By adding subsection (b)(1)(A) in 1998, the Indiana Legislature determined that subsection (b)(1)(A) by itself sufficed as a basis for the punishments available under subsection (b)(1)(B). Post, at 25- *15 26; see also ibid., n. 2 (identifying reckless endangerment statutes with similar structures); cf. post, at 27 (explaining that because in most cases Indiana does not “specify what additional punishment is warranted when [a] crime kills or injures,” its provisions creating higher penalties for vehicle flights that do so reflect a judgment that these flights are “inherently risky”).
The Government would go further and deem it irrelevant under the residual clause whether a crime is a lesser included offense even in cases where that offense carries a less severe penalty than the offense that includes it. As the above discussion indicates, however, the case at hand does not present the occasion to decide that question.
V
Congress chose to frame ACCA in general and qualitative, rather than encyclopedic, terms. It could have defined violent felonies by compiling a list of specific covered offenses. Under the principle that all are deemed to know the law, every armed felon would then be assumed to know which of his prior felonies could serve to increase his sentence. Given that ACCA “requires judges to make sometimes difficult evaluations of the risks posed by different offenses,” this approach could simplify adjudications for judges in some cases. James, 550 U. S., at 210, n. 6.
Congress instead stated a normative principle. The residual clause imposes enhanced punishment for unlawful possession of the firearm when the relevant prior offenses involved a potential risk of physical injury similar to that presented by burglary, extortion, arson, and crimes involving use of explosives. The provision instructs potential recidivists regarding the applicable sentencing regime if they again transgress. It states an intelligible principle and provides guidance that allows a person to “conform his or her conduct to the law.” Chicago v. Morales, 527 U. S. 41, 58 (1999) (plurality opinion). Although this approach may at times be more *16 difficult for courts to implement, it is within congressional power to enact. See James, supra, at 210, n. 6 (giving examples of federal laws similar to ACCA’s residual clause); see also 18 U. S. C. § 1031(b)(2) (“conscious or reckless risk of serious personal injury”);' § 2118(e)(3) (“risk of death, significant physical pain . . . ”); §2246(4) (“substantial risk of death, unconsciousness, extreme physical pain . . . ”); § 2258B(b)(2)(B) (2006 ed., Supp. Ill) (“substantial risk of causing physical injury”); § 3286(b) (2006 ed.) (“forseeable risk of .. . death or serious bodily injury to another person” (footnote omitted)); § 4243(d) (“substantial risk of bodily injury to another person”); §§ 4246(a), (d), (d)(2), (e), (e)(1), (e)(2), (f), (g) (same); § 4247(c)(4)(C) (same).
VI
Felony vehicle flight is a violent felony for purposes of ACCA. The judgment of the Court of Appeals is

Affirmed.