Justice Kagan,
with whom Justice Ginsburg joins,
dissenting.
Vehicular flight comes in different varieties, and so too the statutes that criminalize the conduct. A person may attempt to outrun police officers by driving recklessly and at high speed, in disregard of traffic laws and with disdain for others’ safety. Or a person may fail to heed an officer’s command to pull over, but otherwise drive in a lawful manner, perhaps just trying to find a better place to stop. In Indiana, as in most States, both of these individuals are lawbreakers. But in Indiana, again as in most States, the law takes account of the differences between them, by distinguishing simple from aggravated forms of vehicular flight. Unlike the Court, I would attend to these distinctions when deciding which of Indiana’s several vehicular flight crimes count as “violent felon[ies]” under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B). Because petitioner Marcus Sykes was convicted only of simple vehicular flight, and not of any flight offense involving aggressive or dangerous activity, I would find that he did not commit a “violent felony” under ACCA.
H-1 *37 do not concern ourselves with Sykes’s own conduct. See Taylor v. United States, 495 U. S. 575, 602 (1990). Nor do we proceed by exploring whether some platonic form of an offense — here, some abstract notion of vehicular flight — satisfies ACCA’s residual clause. We instead focus on the elements of the actual state statute at issue. Cf. Chambers v. United States, 555 U. S. 122, 126-127 (2009) (breaking down an Illinois statute into discrete offenses to decide whether the crime of conviction fit within the residual clause); James v. United States, 550 U. S. 192, 202 (2007) (examining how Florida’s law defined attempted burglary to determine if the residual clause included that offense). More particularly, we ask whether “the conduct encompassed by the elements” of that statute, “in the ordinary case” (not in every conceivable case), involves the requisite danger and violence. Id., at 208. By making this inquiry, we attempt to determine whether the crime involved is “characteristic of the armed career criminal” — or otherwise said, whether the prohibited conduct is of a kind that “makes more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.” Begay, 553 U. S., at 145 (internal quotation marks omitted).
Under this approach, some vehicular flight offenses should count as violent felonies under ACCA. Consider, for example, a statute that makes it a crime to “willfully flee from a law enforcement officer by driving at high speed or otherwise demonstrating reckless disregard for the safety of oth *38 ers.” Such a statute, by its terms, encompasses conduct that ordinarily “presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). And the covered conduct qualifies as “purposeful, violent, and aggressive.” Id., at 145. When a motorist responds to an officer’s signal to stop by increasing his speed or taking reckless evasive action, he turns his car into a weapon and provokes confrontation. In so doing, he engages in behavior “roughly similar, in kind as well as in degree of risk posed,” to that involved in ACCA’s enumerated offenses — the sort of conduct, in other words, “typically committed by . . . 'armed career criminals.’” Id., at 143, 146. Like the majority, see ante, at 11-12, I therefore would classify crimes of this type — call them aggravated vehicular flight offenses — as violent felonies under ACCA.
But a vehicular flight offense need not target aggressive and dangerous behavior. Imagine the converse of the statute described above — a statute making it a crime to “willfully flee from a law enforcement officer without driving at high speed or otherwise demonstrating reckless disregard for the safety of others.” That hypothetical statute addresses only simple vehicular flight: mere disregard of a police officer’s directive to stop, devoid of additional conduct creating risk to others. This behavior — often called “failure to stop” — is illegal in most States (under a wide variety of statutory provisions). In Indiana, for example, a driver who “know[s] that a police officer wishes to effectuate a traffic stop” may commit a felony if he attempts to “choose the location of the stop,” rather than pulling over immediately; it makes no difference that the driver “did not speed or disobey any . . . traffic laws.” Woodward v. State, 770 N. E. 2d 897, 902 (Ind. App. 2002).[2] But a mere failure to stop does not *39 usually “presen[t] a serious potential risk of physical injury to another,” § 924(e)(2)(B)(ii), any more than normal driving does. Nor is this conduct “violent . . . and aggressive.” Begay, 553 U. S., at 145; see Brief for United States 43 (characterizing as “nonviolent” a flight from police that complies with “all traffic laws”). True, the offender is ignoring a command he should obey. But nothing in his behavior is affirmatively belligerent: It does not “show an increased likelihood that [he] is the kind of person who might deliberately point the gun and pull the trigger.” Begay, 553 U. S., at 146.[3] And so, under our precedents, a statute criminalizing only simple vehicular flight would not fall within ACCA’s residual clause. I do not understand the majority to disagree.
The Indiana provision under which Sykes was convicted straddles the two hypothetical statutes I have just described. That provision, subsection (b)(1)(A), states that a person commits a felony if he “flees from a law enforcement officer” while “us[ing] a vehicle.” Ind. Code §§ 35-44-3-3(a)(3), (b)(1)(A) (2009). As the Indiana courts have recognized, the subsection thus criminalizes mere failure to stop, which should not count as a violent felony under ACCA. See Woodward, 770 N. E. 2d 897; supra, at 38, and n. 2. But the provision also includes more violent forms of vehicular flight: It covers a person who speeds or drives recklessly, who leads *40 the police on a “Hollywood-style car chase,” Scott v. Harris, 550 U. S. 372, 380 (2007), and who endangers police officers, other drivers, and pedestrians. And so the “conduct encompassed by the elements” of this subsection, James, 550 U. S., at 208, runs the gamut-from simple to aggravated vehicular flight, from the least violent to the most violent form of the activity. Accord, ante, at 24 (Thomas, J., concurring in judgment) (stating that subsection (b)(1)(A) is “not restricted] ... to nonrisky conduct”). The question presented is whether such a facially broad provision meets the requirements of ACCA’s residual clause.
If subsection (b)(1)(A) were the whole of Indiana’s law on vehicular flight, the majority would have a reasonable argument that the provision does so. As noted, a statute fits within the residual clause if it covers conduct that in the ordinary case — not in every conceivable ease — poses serious risk of physical injury and is purposeful, violent, and aggressive. See James, 550 U. S., at 208; Begay, 553 U. S., at 145. We therefore must decide what the ordinary case of vehicular flight actually is. Is it the person trying to escape from police by speeding or driving recklessly, in a way that endangers others? Or is it instead the person driving normally who, for whatever reason, fails to respond immediately to a police officer’s signal? The Government has not presented any empirical evidence addressing this question, and such evidence may not in fact exist.[4] See Wells & Falcone, Re *41 search on Police Pursuits: Advantages of Multiple Data Collection Strategies, 20 Policing Int’l J. Police Strategies & Management 729 (1997) ("Collecting valid and reliable data on policing activities is a perennial problem .... This is particularly true when studying . . . vehicle pursuits”); cf. Begay, 553 U. S., at 154 (Scalia, J., concurring in judgment) (“Needless to say, we do not have these relevant statistics”). But the majority’s intuition that dangerous flights outstrip mere failures to stop — that the aggravated form of the activity is also the ordinary form — seems consistent with common sense and experience. So that judgment, even though unsupported by data, would likely be sufficient to justify the Court’s conclusion were subsection (b)(1)(A) the only relevant provision.
But subsection (b)(1)(A) does not stand alone, and the context of the provision casts a different light on it. Like a great many States (45 by my count), Indiana divides the world of vehicular flight into discrete categories, corresponding to the seriousness of the criminal behavior. At the time of Sykes’s conviction, Indiana had four degrees of vehicular flight, only the first of which — subsection (b)(1)(A) — covered mere failure to stop.[5] See Ind. Code § 35-44-3-3. Indiana classified as a felon any person who:
• “flees from a law enforcement officer” while “us[ing] a vehicle,” § 3(b)(1)(A);
* “flees from a law enforcement officer” while “operat[ing] a vehicle in a manner that creates a substantial risk of bodily injury to another person,” § 3(b)(1)(B);[6]
*42 • “flees from a law enforcement officer” while “operating] a vehicle in a manner that causes serious bodily injury to another person,” § 3(b)(2); or
• “flees from a law enforcement officer” while “operat[ing] a vehicle in a manner that causes the death of another person,” § 3(b)(3) (all emphasis added).
Vehicular flight in Indiana is therefore not a single offense, but instead a series of separate, escalating crimes. Each category captures conduct more dangerous than the one before it, as shown by the language italicized above.[7] And at the very beginning of this series is subsection (b)(1)(A), the offense of which Sykes was convicted.
That placement alters the nature of the analysis. We have previously examined the way statutory provisions relate to each other to determine whether a particular provision counts as a violent felony under ACCA. In Chambers, 555 U. S., at 126-127, we considered an Illinois statute prohibiting within a single section several different kinds of behavior, including escape from a penal institution and failure to report to a penal institution. The courts below had treated the statute as defining a single crime of felonious escape and held that crime to qualify as a violent felony under ACCA. See id., at 125; United States v. Chambers, 473 F. 3d 724, 725-726 (CA7 2007). We disagreed, stating *43 that failure to report was a distinct offense, which did not meet ACCA’s requirements. That was so, we stated, because “[t]he behavior that likely underlies a failure to report would seem less likely to involve a risk of physical harm than the less passive, more aggressive, behavior underlying an escape from custody.” Chambers, 555 U. S., at 127. In addition, we noted, the statute “list[ed] escape and failure to report separately (in its title and its body).” Ibid. We thus considered the failure-to-report clause in its statutory context — as one part of a legislature’s delineation of related criminal offenses — to determine whether the behavior it encompassed ordinarily poses a serious risk of injury.
That same focus on statutory structure resolves this case, because it reveals subsection (b)(1)(A) to aim at a single form — the least serious form — of vehicular flight. Remember; Indiana has made a purposeful choice to divide the full spectrum of vehicular flight into different degrees, based on the danger associated with a driver’s conduct. Once again, starting with the most serious conduct: flight resulting in death; flight resulting in physical injury; flight creating a substantial risk of physical injury; flight. That last category — flight—almost screams to have the word “mere” placed before it. Under the Indiana statute, flight — the conduct prohibited by subsection (b)(1)(A) — is what is left over when no aggravating factor causing substantial risk or harm exists. Put on blinders, and the subsection is naturally understood to address all flight, up to and including the most dangerous kinds. But take off those blinders — view the statute as a whole — and the subsection is instead seen to target failures to stop.
In this vein, the distinction between subsections (b)(1)(A) and (b)(1)(B) is especially telling. As noted, subsection (b)(1)(B) prohibits vehicular flight that “creates a substantial risk of bodily injury to another person.” That language almost precisely tracks the phrasing of ACCA’s residual clause, which refers to conduct that “presents a serious *44 potential risk of physical injury to another.” 18 U. S. C. § 924(e)(2)(B)(ii). This correspondence indicates that the conduct criminalized under subsection (b)(1)(B) qualifies as a violent felony under ACCA. But subsection (b)(1)(A) lacks the very feature that makes subsection (b)(1)(B) and ACCA such a perfect match: It does not require any behavior that poses serious risk to others. This difference in statutory elements indicates that subsection (b)(1)(B) — but not subsection (b)(1)(A) — is directed toward the conduct described in ACCA’s residual clause. To count both as ACCA offenses is to pay insufficient heed to the way the Indiana Legislature drafted its statute — as a series of escalating offenses, ranging from the simple to the most aggravated.[8]
II
The Court does not deny that a State’s decision to divide a generic form of conduct (like vehicular flight) into separate, escalating crimes may make a difference under ACCA; rather, the Court declines to address that question. See ante, at 15. The Court rejects the structural argument here for one, and only one, reason. Indiana, the majority says, “treats violations of subsections (b)(1)(A) and (b)(1)(B) as crimes of the same magnitude”: They are both class D felonies carrying the same punishment.[9] Ante, at 14. See also *45 ante, at 25-26 (Thomas, J., concurring in judgment). But the Court is wrong to think that fact dispositive.
In general, “similar punishment does not necessarily imply similar risk” (or similar violence). James, 550 U. S., at 217 (Scalia, J., dissenting). Because this is so, the Court has never suggested that all state offenses falling within a single felony class and subject to the same penalties must receive the same treatment under ACCA. To the contrary, we have always focused on the “conduct encompassed by the elements of the offense,” id., at 208 (majority opinion) — an inquiry that does not mention the offense’s sentencing consequences. And that is for good reason. It would be quite remarkable if either all or none of Indiana’s (or any State’s) class D felonies satisfied the requirements of the residual clause. In Indiana, other such felonies, subject to “the same magnitude” of punishment, ante, at 14, include election fraud, computer tampering, and “cemetery mischief.” See Ind. Code §3-14-2-1 et seq. (2009); § 35-43-1-4; § 35-43-1-2.1. I presume the *46 Court does not also intend to treat these offenses as violent felonies under ACCA.
Moreover, Indiana sentencing law has always enabled judges to take account of the difference between subsections (b)(1)(A) and (b)(1)(B) in imposing punishment. As the majority notes, ante, at 14, Indiana provides for a range of prison terms for class D felonies, stretching from six months to three years. And in deciding what term to impose (or whether to suspend the term), courts may consider an array of aggravating factors — including whether the crime “threatened serious harm to persons,” § S5-38-l-7.1(b)(l). Convictions under subsections (b)(1)(A) and (b)(1)(B) therefore may produce widely varying sentences, as judges respond to the different forms of vehicular flight targeted by the offenses.
The Court argues, in support of its position, that the “similarity in punishment” reveals that the conduct falling within subsection (b)(1)(A) is “rough[ly] equivalent,” in terms of risk, to the conduct falling within subsection (b)(1)(B). Ante, at 14 (internal quotation marks omitted); see also ante, at 25-26 (Thomas, J., concurring in judgment). More specifically, the Court claims that the Indiana Legislature added subsection (b)(1)(A) to the statute in 1998 because it determined that vehicular flight is per se risky — and that all such flight therefore deserves the same punishment as is meted out to the various non-flight conduct that subsection (b)(1)(B) prohibits upon a showing of risk. See ante, at 14; see also n. 9, supra. But that argument disregards the legislature’s decision to criminalize vehicular flight in both provisions— that is, to retain subsection (b)(1)(B)’s prohibition on risky vehicular flight alongside subsection (b)(1)(A)’s ban on simple flight. In effect, the Court reads subsection (b)(1)(A) as including all vehicular flight and subsection (b)(1)(B) as including only the other (non-flight) things it mentions — even though subsection (b)(1)(B) specifically bars “fleeting] from a law enforcement officer ... in a manner that creates a substantial risk of bodily injury.”
*47 Perhaps the Court assumes that the Indiana Legislature, in enacting subsection (b)(1)(A), simply forgot to remove the reference to vehicular flight in subsection (b)(1)(B). Cf. ante, at 25 (Thomas, J., concurring in judgment) (acknowledging superfluity). But if so, the legislature forgot four more times to correct its error, as it serially amended and reamended its vehicular flight statute over the last 13 years.[10] And more fundamentally, a better explanation than legislative mistake is available for Indiana's decision to enact subsection (b)(1)(A) while keeping subsection (b)(1)(B)’s ban on risky vehicular flight. Prior to 1998, Indiana, unlike most other States in the nation, cf. infra, at 48, did not criminalize simple vehicular flight (i e., failure to stop) at all. See 1998 Ind. Acts pp. 677-678. So Indiana's decision to create that offense in subsection (b)(1)(A) — and to distinguish it from the more aggravated forms of vehicular flight already penalized under subsections (b)(1)(B), (b)(2), and (b)(3) — brought the State’s vehicular flight statute into conformity with the prevailing approach used nationwide. Especially given that backdrop, I would not impute shoddy draftsmanship to the Indiana Legislature. I would heed what that body said, rather than assume (just because it made both offenses class D felonies) that it must have meant something different. And what the legislature said is that vehicular flight comes in different forms — one posing substantial risk of injury (subsection (b)(1)(B)) and one not (subsection (b)(1)(A)).
The best that can be said for the Court’s approach is that it is very narrow — indeed, that it decides almost no case other than this one. As noted above, see supra, at 44, the Court reserves the question whether a vehicular flight provision like subsection (b)(1)(A) is a crime of violence under ACCA “where that offense carries a less severe penalty than *48 [a greater] offense that includes it,” ante, at 15. But as fate would have it, that reservation describes the great majority of vehicular flight statutes' across the country. Indiana is idiosyncratic in this respect; other States not only separately prohibit, but also differently punish, simple and aggravated vehicular flight.[11] Or perhaps I should say Indiana was idiosyncratic. That is because in 2006, a few years after Sykes’s conviction, Indiana amended its vehicular flight statute to set different penalties for violations of subsections (b)(1)(A) and (b)(1)(B). A person who violates subsection (b)(1)(B) today faces a mandatory 30-day sentence that cannot be suspended; that sentence rises to six months or one year for repeat offenders. See Ind. Code § 35-44-3-3(d). By contrast, a person who violates subsection (b)(1)(A), even more than once, is not subject to any mandatory jail time. See §35-44-3~3(d). So by its own terms, the Court’s opinion— our fourth applying ACCA’s residual clause in as many years — applies only to a single State’s vehicular flight statute as it existed from 1998 to 2006. Cf. ante, at 33 (Scalia, J., dissenting) (“[W]e will be doing ad hoc application of ACCA .. . until the cows come home”).
* * *
The Indiana statute before us creates a series of escalating offenses dividing the universe of vehicular flight into discrete categories. One of those categories, subsection (b)(1)(B), requires proof that the defendant operated “a vehicle in a manner that creates a substantial risk of bodily injury.” That phrase tracks the language that ACCA’s residual clause uses to define a crime of violence. Other provisions in the Indiana statute demand even more — actual injury or death. In *49 stark contrast, subsection (b)(1)(A), the least severe of the State’s vehicular flight offenses and the one of which Sykes was convicted, lacks any element relating to threat of physical injury. In deciding this ease, I would respect that statutory difference. And because I would take the Indiana Legislature at its word, I respectfully dissent.

 The majority attempts to show that Woodward involved conduct more risky and violent than a simple failure to stop. See ante, at 5-6; see also ante, at 23-24 (Thomas, J., concurring in judgment). But the facts of that case, like the faets of this one, are irrelevant. Under ACCA, all that mat- *39 tors is the elements of the offenoc, and the Indiana Court of Appeals hold in Woodward that a person who “merely fail[s] to stop” for police, and doce nothing more, commits a felony under state law. 770 N. E. 2d, at 900-902.

 Indeed, a driver may refrain from pulling over immediately out of concern for his own safety. He may worry, for example, that road conditions make it hazardous to stop. Or a driver may fear that the person initiating the stop is a criminal rather than a police officer. See, e. g., Brennan, Rapist To Spend Life in Prison, Tampa Tribune, Feb. 18, 2011, Metro section, p. 3 (“[A man] impersonating a police officer ... used the ruse to pull over a woman . . . and then kidnap and rape her”); DeKunder, Watch for “Fake” Police, Local Authorities Warn, Northeast Herald, Jan. 14, 2010, pp. 12,13 (noting several similar incidents).

 The Government offers anecdotal examples and statistical surveys of vehicular flights, see Brief for United States 13-15,17-22, but none helps to answer whether the “ordinary” ease of vehicular flight is aggravated or simple. Cf. ante, at 31-33 (Scalia, J,, dissenting). The anecdotes and all but ono of tho surveys demonstrate only that some vehicular flights result in serious injury, a proposition no one does or could dispute. The single statistical study cited by the Government that posits an injury rate for vehicular flight concludes that about 4% of 7,737 reported police pursuits harmed police or bystanders. But that study may well involve only aggravated flights. See C. Lum & G. Faehner, Police Pursuits in an Age of Innovation and Reform 55 (2008) (noting that the study relies on voluntary *41 and non-systematic reporting and that participating police departments might not have reported “informal” incidents). And even assuming the study is comprehensive, it is entirely consistent with the possibility that the “ordinary ease” — i. e.s the most common form — of vehicular flight is mere failure to stop, which produces a much lower rate of injury.

 After Sykes's conviction, Indiana added yet a fifth degree. See 2010 Ind. Acts p. 1197. The four degrees described above remain unchanged.

 This provision also bars a range of other conduct. See n. 9, infra.

 Justice Thomas attempts to bisect this series by stating that the two most serious degrees of aggravated vehicular flight “enhance punishment based solely on the roeulto of the flight, not the degree of risk it posed.’' Ante, at 27. But conduct that leads to serious injury or death is ordinarily more risky, viewed ox anto, than conduct that doco not produce these results. And in any event, the fundamental point here is that the Indiana statute grades vehicular flight according to the scriousncoo of the behavior — ranging from flight that need not pose any risk of harm, through flight posing a substantial risk of harm, to flight involving a certainty of harm. Subsections (b)(2) and (b)(3) thus underscore that Indiana has divided the world of vehicular flight into diocrctc, ascending crimes, rather than treating all vehicular flight as of a piece.

 None of this is to deny that prosecutors may sometimes charge violent and dangerous offenders under subsection (b)(1)(A). A prosecutor may elect to use a lower grade of vehicular flight when he could use a higher one, either as a matter of diecretion or because the defendant entered into a plea bargain. This ease provides one example, see ante, at 16 (majority opinion), and Justice Thomas offers several others, see ante, at 21-22. But as everyone agrees, what matters in determining whether an offense qualifies under ACCA’s residual clause is the “ordinary case” of conviction. And in the absence of reliable empirical evidence, the structure of the Indiana statute provides the best way to discern the ordinary case under each subsection.

 Tho Government purno the structural argument on a different ground, contending that subsection (b)(1)(A) is not a lesser included offenee of subsection (b)(1)(B). The Court wisely does not accept this claim. Both sub *45 sections (b)(1)(A) and (b)(1)(B) involve the use of a vehicle to flee, with subsection (b)(1)(B) additionally requiring that this use “creat[e] a substantial risk of bodily injury.” So a fleeing driver who violates subsection (b)(1)(B) necessarily runs afoul of subsection (b)(1)(A) as well. The Government contends, in response, that a person can violate subsection (b)(1)(B) and not (b)(1)(A) by engaging in conduct other than vehicular flight. See Brief for United States 48-49, n. 11. That is because subsection (b)(1)(B) additionally prohibits “obstructfing]” or “resisting]” a police officer by a variety of means, including through use of a vehicle. But Indiana law makes clear that subsection (b)(1)(A) still counts as a lesser included offense of subsection (b)(1)(B) in any prosecution involving vehicular flight. See Wright v. State, 658 N. E. 2d 563, 566-567 (Ind. 1995) (holding a crime to be a lesser included offense if its elements are “factually” subsumed within another offense). And even if that were not the case, it should make no difference. The meaningful question for purposes of ACCA is whether subsection (b)(1)(B)’s prohibition of aggravated vehicular flight indicates that subsection (b)(1)(A) targets simple vehicular flight. That a person can violate subsection (b)(1)(B) by means independent of any vehicular flight has no bearing on that question.

 See 2011 Ind. Acts pp. 91-92; 2010 Ind. Acts pp. 1196-1197, 1186-1187; 2006 Ind. Acts p. 2470. Notably, one of these amendments roviaod subsotion (b)(1)(B) itself. See ibid.

 See, e.g., Fla. Stat. §316.1935 (2010); Mich. Comp. Laws Aim. § 257.602a (West 2010); Minn. Stat. §609.487 (2010); N. J. Stat. Ann. §2C:29-2 (West Supp. 2011); S. C. Code Ann. §56-5-750 (2006); Tenn. Code Ann. §39-16-603 (Supp. 2011); Tex. Penal Code Ann. §38.04 (West 2011); Utah Code Ann. §76-8-305.5 (Lexis 2008).